Good morning, your honors, and may it please the court, Ashley Aul for the United States. I will watch my own clock, but I will try to reserve about five minutes for rebuttal. As a matter of law, California's definition of methamphetamine is not overbroad. The California default definition of isomer, which applies not just to methamphetamine, but to many, many drugs, certainly includes words that the federal definition of isomer doesn't. But the defendant's burden is to show that the statute is actually broader, that is to say in real life, not just as a matter of semantics, than the federal one. As a result, all of the tests this court looks to when applying the categorical approach ultimately look to the real world. They ask, is there conduct that is encompassed in the state statute that isn't in the federal statute? Or from Duenas Alvarez, which we've quoted a lot, is there a realistic probability the statute is an overbroad way? And the answer here is no. However, the court does not even need to get to the organic chemistry to come to that answer. I believe the correct way to get to that answer is to conclude the defendant did not meet her burden to show that realistic probability well before we got to the lengthy hearing about organic chemistry. The reason why that is, in my view, is again, I can see that there is a language difference. But the Supreme Court has emphasized in Quarles and other cases that, of course, the categorical approach isn't just about language. That's the whole point. A state can't just call a statute robbery and have it qualify as robbery. The court looks beyond the language to determine whether there is actually conduct that qualifies under whatever the federal definition is. So this court in Griselle, of course, analyzed Duenas Alvarez and effectively articulated two ways in which a defendant can typically meet that burden to show a real-world overbreath. One way is to point to where the text itself makes that overbreath evident. And I think defendant has always assumed this is a case where the text itself makes that overbreath evident. Why isn't it? Because the text without more says it applies to geometric isomers and the federal crime doesn't. So why facially, textually, isn't it, Brouhaha? So I wanted just to make sure I'm using language correctly. I totally agree that there is a language difference, but I just want to push on the idea that that is not ultimately the question. It may not be, but you said they've relied on the notion that the text is broader. The text is broader, the text is broader, is it not? Yes. They've relied on the notion that the test under Griselle is that the text itself makes overbreath, and by overbreath I mean real-world overbreath, evident. And I admit there are contexts in which text alone can make real-world overbreath evident. Griselle is a perfect example of such a case. The legislature there not only said that they intended to define burglary more broadly, but of course then burglary applied to a number of real-world objects we all know exist that did not appear in the federal version. Similarly in Chavez-Solis and the definition of child pornography, there were categories that were included, but it took no outside knowledge to know existed, and so that text alone was enough. So let me ask you the question that I think goes to the heart of my problem with your position. We bothered poor Judge Wright in this case, and we sent it back to him, and he made a finding that the geometric isomer doesn't exist. And I don't think, you know, that finding is surely supported by the evidence that was in front of it. But do we have to send, in applying the categorical approach, can we have evidentiary findings by district judges about whether or not various things in a statute really exist? Doesn't the Supreme Court try to get us out of that business? But I'm wondering, having, so just to pile on to that question, I'm just wondering though whether our having done that makes a difference. I mean, perhaps that was improvident, but the fact that we did it, should we now ignore the results? So I think I have two or three answers that encompasses those questions. And we're asking the same question, really. Yeah. So I'm going to put aside that I actually don't think the court had to do that for the reasons I was just saying. But Judge Hurwitz, your question, the truth is that the categorical approach already, in contexts that are much more familiar than this, includes factual issues that are relevant to- It includes the Shepard documents. But- No. So that's what, I mean, much more broadly. When the court is determining whether, like what the categorical scope of a statute is, one of the ways of doing that under Griselle, of course, is to see whether defendant actually can identify cases in which the California- But Griselle's slightly, with respect, Griselle's slightly different. Griselle's a statute that, on its face, is not categorically overbroad, textually. But the defendant says, I don't care what the statute says. In California, they apply this to more things than the federal law does. And we say, you know, you got to have evidence of that. We're just reading the statute. It doesn't appear to be overbroad. This is a little different. What if we, what if in the next case, we send it to Judge Battalion for a hearing, or some other circuit does, his circuit, and he says, oh no, I find the geometric isomer does exist. What do we do then? Isn't this a finding good for this case and this case only? No, Your Honor. And for the, so I think the best example of this is the cases that involve, as you just said, looking to whether or not particular cases are charged a certain way, or whether, that is a factual question, right? So in Vega-Ortiz, for instance, which was about LMATH, the court asked, well, are there cases in which the California courts have gone after LMATH, which is nasal spray? And the court found, no, they don't. But of course, that could change, right? In a future case, a defendant could find some evidence that the California courts were going after LMATH. And then in that kind of case, the court would reconsider. But what it does is it sets a default. But weren't we dealing in Griselle with a statute that on its face didn't cover LMATH? So Griselle is not the LMATH case, Griselle is the Montgomery case. I understand. But I mean, in Duenas or whichever one, we're dealing with a statute that's on its face, didn't cover the non-categorical item, but the defendant was saying, I don't care what the statute says, in reality, the government does go after things broader than the statute. That's different, it seems to me, than when the statute is facially broad. It is different. But what it evidences is that it is already the case and very well established that this court relies on factual issues when ultimately coming to legal conclusions about the scope of a statute. To use the LMATH example from Vega-Ortiz, a defendant could come forward in a future case and say, I know Vega-Ortiz held that California's definition of MATH isn't overbroad for this nasal spray reason, but hey, look, I found exactly what they didn't have in that case. A defendant could do that in the same way that a defendant here, notwithstanding the default, which I think should be that it's a matter of law, it's not overbroad for this isomer reason. If a defendant comes forward with a different record, then a court would reconsider in the same way they would in any of the cases granted from a slightly different context in which the court is relying on what state courts have actually done. That's a record that could change in the future. Nevertheless, it does not get in the way of this court finding as a matter of law that, for instance, California's definition of MATH with respect to nasal sprays isn't overbroad. Let me ask the question slightly differently. We have the next case and this case, exactly the same facts. Is the defendant bound by Judge Wright's finding that there was no, there is no geometric isomer? The defendant would be bound by this court's finding that as a matter of law, the definition is not overbroad. And yes, that finding does incorporate on this record, this factual issue, but that's no different again from the other contexts under the categorical approach in which there are these secondary factual issues lurking under legal rulings. This however, does get to Judge Wardlaw's question, which is, did we have to do this and what do we do with it now that we did? And I think for the reason that I don't think this statute makes the real world overbreath evident on its face, the statute should have been analyzed more like the statutes in Vega-Ortiz and Aguilera-Rios, where there was a textual hook for the defendant's overbreath arguments, but ultimately the court wasn't persuaded that that textual difference was sufficiently evident to use the Griselle term. And as a result, it remained, it remained defendant's burden to come forward with some evidence that that overbreath was meaningful, that it was real. And here- Can I ask a question? How does California charge possession distribution of meth? Does it break it down to isomers and salts and various types of isomers, or does it just charge meth? In this particular case, Your Honor, and in other cases I've seen, I have just seen meth charged. So we're not dealing with a modified categorical approach here? Correct. Correct. But so again, to Judge Wardlaw's question, having done this here, to be honest, I think it just gives us more of a record than we need and provides the court with more comfort that it's not doing something that is scientifically incorrect. Having gotten this finding and this finding from other courts that I mentioned in my supplemental brief, I think it can give the court some comfort that it is not doing something crazy by finding that this definition isn't overbroad. That said, I don't think it was necessary. I think it was the defendant's burden to come forward either with evidence that this category exists or with some evidence that California, as you just referenced, Judge Wardlaw, actually charges isomers this way. The best analogy I can think of, it's an imperfect analogy like most analogies, is if you had, for instance, an invitation to a party, one that applied to Mary and another that applied to Mary and her siblings. And the question is, is one party invitation broader than the other? And the answer is, you don't know unless you know whether Mary has siblings. It could be that they're identical. However, and that's exactly similar to what we have here, which is you don't know whether or not California's methamphetamine definition is overbroad just by looking at the text. It's like something that says Mary and her siblings. It may or may not be broader than just Mary. So on the facts here, I believe the correct answer was that it was the defendant's burden to show a realistic probability that California, in fact, applies a definition of methamphetamine that is overbroad. She did not meet that burden, and therefore, as a matter of law, the district court could have held and this court should hold that California's definition is not broader than the federal one. I realize you wanted to save time, but how do you distinguish the Seventh Circuit decision in De La Torre? So the shortest answer is that that is dicta in light of all of the other reasons the Seventh Circuit cited for rejecting the government's argument there. I think it was about sixth in a list of reasons why it thought the government's argument didn't work. That's it. I think it's wrong. To the extent that it is read as far as defendant thinks that it goes, it frankly conflicts with Supreme Court precedent. Supreme Court precedent requires under the categorical approach that there be a real world realistic probability of a state applying its statute more broadly. And if you rely on the text to the point that it actually contradicts the Supreme Court precedent, then I think you've overread those textural cases and have come to a result that actually is not permissible under the law. I will attempt to save my time for rebuttal. All right. Thank you. Mr. Manager. You're still on mute, Mr. Manager. Okay, good. Thank you, Your Honors. David Menninger, on behalf, may it please the Court, David Menninger, on behalf of Defendant Apeli Francisco Rodriguez-Gamboa. This Court has never made the reach of a statute dependent on a factual finding in a particular case. No decision of the Supreme Court or of its sister circuit supports such an approach. But that is exactly what the Court is asking, or what the government is asking the Court to do here. Of course, we disagree as to what the factual record in this case shows, and I'm happy to address that. But the larger issue is whether this Court will simply follow Griselle, or will it for the first time require evidentiary hearings to determine the reach of a statute under the categorical approach? So I would first like to address a point that the government was making. The government was saying that there already are factual determinations made in discerning the reach of a statute under the categorical approach, and I think that's wrong. When a Court looks at state law to determine how state courts interpret a statute, that's a legal determination. And of course, when this Court says California defines robbery as California law, according to this Supreme Court decision, defines robbery as X, but then there's a later Supreme Court decision that changes that. Of course, this Court recognizes California courts as having the primary authority on interpreting their own law. That is a legal determination. That is not something that requires an evidentiary hearing, and requires an evidentiary hearing that would have to go on in every single case involving California methamphetamine, or that would require the Supreme Court to determine whether a California methamphetamine statute counts as a federal controlled substance offense. And, you know, as we mentioned in our brief, in sentencing cases, or in many sentencing cases, that would have to be something that the jury would then have to determine. And so I think that real world practical problem really highlights the folly in the government's approach. What do you do with the language in Duenas-Alvarez? The reasonable probability language? So yes, but as this Court has explained time and time again, one way to fulfill that is to look at the explicit text of the statute. And this Court has always said, and its sister circuits have always said, when there is a substance that appears on a state drug schedule that does not appear on the federal schedule, it is overbroad. And in fact, that is exactly what the Supreme Court said just a few years ago in Mullooly v. Lynch. Right, but none of those cases, none of those cases address, I ask you to assume this for purposes of my question, a substance that doesn't exist. And so there is no case on point from the Supreme Court. Maybe the Seventh Circuit case is on point, maybe it's not. So we're sort of in uncharted territory here. Let's assume that the substance doesn't exist. What purpose is served by finding categorical overbreadth here? Because the alternative, Your Honor, would require evidentiary hearings in every case. It would never be settled. It would be a factual issue that would have to be continually re-litigated. The government says in, or suggests that we submitted no evidence in the case, but that's just not correct. We did submit evidence. We submitted evidence of the government's own expert who previously said there are geometrical isomers of methamphetamine. We submitted a peer-reviewed journal article that also refers to a geometrical isomer of methamphetamine. Those are clearly not- Excuse me. So I'm wondering, and this is also a question for Ms. Olive when she returns, to what extent do we owe deference to the California State Legislature? I mean, if we were to say these don't exist, are we saying the California Legislature, it just doesn't know what it's doing, and it made criminal possession of something that doesn't exist? I mean, it seems to me that comedy, or some principles of comedy, which I know nobody has ever briefed or any of this aspect, requires us to say what the California Legislature said. Who are we to say they don't know what they're talking about because these experts in a federal district court hearing years and years later said it doesn't exist, and the district court made such a finding. Your Honor, I think that's exactly right. And that's what the court, that's what the Seventh Circuit said in De La Torre. They said it is not our office to second-guess the choices of the Indiana Legislature. And the California, the government says in its letter brief, the California Legislature painted with a broader brush than the federal, than Congress. They wanted to purposely make it so that California courts never had to get bogged down in this forms of methamphetamine. And for that reason, as suggested by Your Honor's earlier question, they don't, California prosecutors don't even have to charge the isomer. It's just undisputed that it covers, this just doesn't have to come up. So they wanted to, they wanted, California legislatures wanted to make sure that they exist and could never exist, because that's the way they do business. Well, Your Honor, we have to look at, Your Honor, again, we dispute whether it, whether it doesn't exist. You didn't present an expert that it did. No, Your Honor, but the government's own expert previously said that it did. And then he recanted, and you didn't go out and find an expert to say that the government's expert's first opinion was correct. You just decided that wasn't necessary. Well, no, Your Honor, we thought the government's experts made our points for us. And I would also highlight, and they recanted it, he recanted it, didn't he? He said that he was interpreting the word geometrical to mean a different thing than what the government wanted geometrical to mean in this case. And I don't want to get into client privilege or anything, but I assume you went out and tried to find another expert that would support your position. Did you find one? Your Honor, I think, again, I would say that we, we submitted evidence and the record in the government's own experts made our, made our case for us. Again, the government's lead expert, Dr. Stoltz, which is a different one than the one who changed his position, he conceded that diastereomers of methamphetamine do exist, right? The government conceded that in their briefing. And if you remember, that's key under the text of the statute, which says geometrical parentheses diastereomeric isomers. And if they are conceded, they conceded that diastereomeric isomers exist. But again, and of course, then we have the government's prior expert that it is since disavowed that said geometrical means diastereomeric. But I think all of these shifting factual opinions of the government's experts just highlights the folly of making all of this contingent on a factual record that is presented in a, in one case. And you don't think that your position is, is that we've got no business correcting a drafting error by the California legislature? Well, I don't think it's a drafting error, but... Okay, assume that it is for a moment. Answer Judge Battalion's question. Assume that the California legislature just goofed. They put in an extra isomer where they didn't need to. Yeah, they just did what they did with all the other drugs and they all added them together. None of them took high school chemistry or don't remember it. And so this is what we got. And we can't correct that error, assuming. Your Honor, I don't think this court should be in the business of second guessing the decisions of the California legislature, particularly where, as this court noted in its first opinion, the way that they chose which substances apply to which isomers suggests a deliberate choice. You know, amphetamine does not include, the amphetamine definition does not include geometrical isomers. Yeah, but you keep going back to defending the legislature and maybe you should. My question is, and the one I think Judge Battalion is asking, is just a categorical one. Wrong term. In your view, it doesn't matter, correct? In your view, they could have done this out of pure ignorance or spite. As long as it was broader textually, we're done. That's your position, isn't it? As long as there is a substance that appears on the California state's... Even if it's not a substance. As... Your Honor... I know you don't want to give up your argument that the geometric isomer really exists. No, Your Honor. So, for purposes of my question, pretend that everybody in the world agrees the geometric isomer doesn't exist. As long as the California legislature calls it a substance, Your Honor, the statute is overbroad. Okay. And that's your answer to Judge Battalion, isn't it? It doesn't matter. If they were stupid, if they did this out of spite, if they did it out of pure ignorance, just to screw up the federal government when it tried to apply it to some other cases, it doesn't matter. In your view, it's okay as long as there's another word there, correct? Yes. Yes. As long as there is another... Something that the California legislature says was another substance. And again, Your Honor, that's exactly what the Supreme Court said in Malooly v. Lynch. And in Malooly, what the Supreme Court said was... What the Supreme Court did is it just said there is, I believe it was gymsinweed, something that most people haven't heard of, I certainly hadn't heard of, and that was enough to make this statute overbroad. And what the court said in Malooly v. Lynch is the categorical approach is supposed to be efficient and it's supposed to be predictable. And there is nothing efficient or predictable in requiring district courts in every case to have an evidentiary hearing, and not just for California methamphetamine. This comes up with plenty other drug schedules as well. For example, Illinois includes in its definition of cocaine a positional isomer. And the government, in a Seventh Circuit case that is currently pending, says there is no such thing as a positional isomer. And if the Seventh Circuit were to follow the government in that case, they would then be miring their district courts in the same sort of litigation that happened in this case. And if the Ninth Circuit Court, of course, might face a similar Illinois conviction, and then we would have to, the district courts in this circuit would also have to do that. I mean, to follow the government here would be to open the door to these factual challenges about whether this could have been possessed in this jurisdiction and on this date. Now, just a second, counsel. If you can't find an expert that says that there is an isomer that exists, okay, who's going to find one? And if you can't find one, then why in the world would you even litigate it? Well, Your Honor, there's no... From a factual standpoint. Your Honor, there's no rule that says a party has to proffer an expert witness to have a factual dispute. You do have to proffer evidence, right? And as I mentioned, we proffered it, we submitted it in this case. Okay, so I'm going to hire a police officer to come in and give chemical testimony about the chemical structure of methamphetamine. And that officer doesn't have any background in chemistry, no training in chemistry, that's just a factual question. And you're saying that that's going to happen on a day-to-day basis. I mean, please, if you're going to have an expert, if you're going to argue about the whether it applies or not, you got to have an expert. I don't see anybody that says that there is an expert that's going to testify. I don't see the monumental factual problem that you're telling me. Well, Your Honor, again, I would point out the government's lead expert says that diastereomers of methamphetamine exists. So respectfully, I would think that that does present it. And again, let's talk about other statutes that have other substances that the government claims might not exist, or might not have existed at a certain time, or might not have been able to be possessed in a certain jurisdiction, or might overlap with another substance. And this court is really inviting lots of litigation, again, that would have to be repeated in every single case. And so I asked Ms. Al, how does California charge this? Does California actually distinguish the isomers when it's charging criminal possession? It doesn't, right? No, it just says methamphetamine, Your Honor. The record in this case, and I mean, it's not in the record, but in every case I've seen, just as methamphetamine, the California courts didn't want to, California legislature didn't want their courts to have to get into this. Right. So why does, why do we have to get into it? Why isn't meth, meth? And however, the state chooses to define it when it makes no practical difference in the real world. Well, Your Honor, I think the, you know, well, the California, respectfully, I think the California legislature did define it differently. It defined it to include these isomers. And because it included these isomers in a way that were not included in the federal definition under this court's precedent. And apparently in California, it makes no difference in how the methamphetamines are charged. And so as a, you know, as a practical matter, why should it make a difference when that same crime is being applied in federal court? Well, Your Honor, because the California definition is broader and it never comes up in California courts because California courts, the California, that was the California legislative. And I think that's the intent that's evident from their broader definition. And, you know, what this court has said, what Malooly says is that if a drug schedule is broader than the federal schedule, then that makes the statute overbroad. And just to finish up, I see my time is over, but I ask that the court reject the government's burdensome factual steps to the already complicated categorical approach and to affirm the dismissal of the information here. Thank you. Thank you, Mr. Menninger. Ms. O'Hall. Very briefly. First, on the question of deference to the legislature, the structure of the statute answers that question, I think here. California did not reflect any specific intent or belief that methamphetamine had these isomers. To use the siblings example again, it's as though they made a list that said the following prohibition applies to all of the following people and their siblings. And some of the people on that list had siblings and some of the people on that list didn't. It reflected efficiency, not some choice or belief that, pardon me, that methamphetamine had these isomers. It just made sure that they wouldn't miss anything that did exist. And the legislative history that we've put forth at, I think, 14 to 16 of our letter brief shows that what they really cared about was cocaine. And so what they did is they figured out that they were having this trouble with cocaine defenses and they didn't want to deal with this again. And so they just applied that definition to dozens and dozens of drugs. But it's just like the siblings example. That doesn't reflect some legislative belief that there were these isomers. It's just that if they did existed, pardon me, if they did exist, rather, they wanted to make sure they were covered. So I don't think that there is any comedy principle violated by finding these don't exist. If anything, it just finds that the California legislature's efficient approach to definitions didn't result in any per se overbred. Second, this is essentially the argument you made to us before, I think, that the word it's isomers meant to restrict it to the isomers that actually existed. Looking at that, I think that's frankly an over technical way. And I blame myself of saying something much more obvious, which is just that you can have general definitions that apply to long lists of things that don't apply equally to all those long lists of things. The siblings example. And so it just doesn't reflect a belief that each each member of that list had all of the definitional elements. It's just a way of avoiding having for every single drug to say meth includes this isomer and that isomer. It's efficiency. That's all that it is. Second, I would say defendant overstates the evidentiary hearing problem for two different reasons. One is that there was no evidentiary hearing required at all because the overbred, again, the real world overbred isn't evident on the text alone. It was defendant's burden to come forward with evidence, and she did not do so affirmatively. And two, because as Judge Battalion indicated, and this is what's happened in other cases, when you have an uncontradicted record, when you don't have someone standing up on the material fact and saying these isomers do exist, there's no requirement for a hearing at all. And then just finally, defendant's reading of Grizel totally distorts that case and makes it contrary to Supreme Court precedent. In defendant's view, a California statute that included unicorns would be per se overbroad, and this court couldn't do anything about it. Because the statute said unicorns, even though everyone knows those don't exist, that statute would be per se overbroad. That runs totally contrary to Duenas-Alvarez's rule and the categorical approach as a whole, and that's ultimately the problem with defendant's reading of the statute here. So I would ask the court to find that California's methamphetamine definition, as a matter of law, is not overbroad. All right. Thank you, counsel. Um, U.S. versus Rodriguez-Gamboa is submitted, and this session of the court is adjourned for today.
judges: Wardlaw, Hurwitz, Bataillon